

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

FILED: 3/31/10
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID J. MALAND, CLERK

| | | |
|---|---|---|
| S.H., a minor child, | § | |
| by next friends A.H. and E.H., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:08-CV-96 |
| | § | |
| PLANO INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLANO**
**INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY**
**JUDGMENT ON THE ADMINISTRATIVE RECORD AND S.H.'S**
**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

The following motions are pending before the court:

1.  Plano Independent School District's motion for summary judgment on the administrative record (docket entry #32);

2.  Plaintiff's response to Plano ISD's motion for summary judgment on the administrative record (docket entry #42);

3.  Plano Independent School District's reply to S.H.'s response to its motion for summary judgment on the administrative record (docket entry #44); and

4.  Plaintiff's sur-reply to Plano ISD's response to Plaintiff's motion for judgment on the administrative record (docket entry #46).

_____

1.  Plaintiff S.H.'s motion for judgment on the administrative record (docket entry #33);

2.  Plano Independent School District's response to S.H.'s motion for summary judgment on the administrative record (docket entry #40);

3.  Plaintiff's reply to Plano ISD's response to Plaintiff's motion for judgment on the

administrative record (docket entry #43); and

4.  Plano Independent School District's sur-reply to S.H.'s reply to its response to S.H.'s motion for judgment (docket entry #45).

Having considered the motions, the court finds that the motions should be granted in part.

OBJECTIONS

The Plaintiff, S.H.[1], objects to the Defendant's briefing because the Plaintiffs allege that the

same exceeds the page limitations imposed by the court's local rules. In the scheduling order dated

September 8, 2008, the court ordered the parties as follows:

> The time and page limitations for any Motion for Judgment on the Administrative Record, along with any responses, replies, and surreplies [ ] be the same as those provided under United States Eastern District of Texas Local Rule CV-7(a)(1) for summary judgment dispositive motions.

SCHEDULING ORDER, p. 2, ¶ 4 (docket entry #16). Local Rule CV-7(a)(1) of the Local Court Rules

for the Eastern District of Texas provides as follows:

> **Dispositive Motions.** A dispositive motion shall not exceed thirty pages, excluding attachments, unless leave of court is first obtained. Likewise, a party opposing a dispositive motion shall limit the response to the motion to thirty pages, excluding attachments, unless leave of court is first obtained. . . . Any reply or surreply to an opposed dispositive motion filed pursuant to section (f) of this rule shall not exceed ten pages, excluding attachments.

> If a party files more than one summary judgment motion, the following additional limitations shall apply: (1) a party's summary judgment motions shall not exceed sixty pages collectively, excluding attachments; (2) a party's responses to summary judgment motions shall not exceed sixty pages collectively, excluding attachments; (3) a party's reply to summary judgment motions shall not exceed twenty pages collectively excluding attachments; and (4) a party's surreply briefing to summary judgment motions shall likewise not exceed twenty pages collectively, excluding

---

[1] The Plaintiffs and the Defendant each filed separate lawsuits asserting claims under the IDEA. *See* 4:08-cv-96 and 4:08-cv-118, respectively. Upon the unopposed motion of the Plaintiffs, the court consolidated the two lawsuits. For clarity, the court will refer to the minor child and his parents as the Plaintiffs, the child or parents. The court will refer to the school district as the Defendant.

-2-

attachments.

EASTERN DIST. OF TEXAS LOCAL COURT RULES, RULE CV-7(a)(1).

Here, the Plaintiffs filed a dispositive motion for judgment on the administrative record and the Defendant filed a dispositive motion for summary judgment on the administrative record. Since each party only filed one dispositive motion, each dispositive motion should not have exceeded thirty pages. The Plaintiffs' dispositive motion did not exceed thirty pages. The Defendants' dispositive motion, however, exceeded the thirty page limit by thirty pages.

Likewise, the parties' responses to the respective dispositive motions should not have exceeded thirty pages. The Plaintiffs' response to the Defendant's dispositive motion did not exceed thirty pages. The Defendant's response to the Plaintiffs' dispositive motion exceeded the thirty page limit by 17 pages.

The parties' replies to the respective responses should not have exceeded ten pages. The Plaintiffs' reply brief did not exceed ten pages. The Defendant's reply, however, exceeded the ten page limit by ten pages.

Similarly, the parties' sur-replies should not have exceeded ten pages. The Plaintiffs' sur-reply exceeded the ten page limit by three pages. The Defendant's sur-reply did not exceed the ten page limit.

The court notes that neither party sought leave of court to exceed the page limitations. Clearly, however, the Defendant was operating under the mistaken impression that it should follow the page limitations that apply to parties who file more than one motion for summary judgment. While the court encourages the parties to be mindful of the court's local rules in general and, more specifically, the rules regarding page limitations, the court is not inclined to strike the parties'

briefing.

**BACKGROUND**

The child, S.H., was born on May 21, 2003. On October 12, 2004, Dr. Lisa Genecov evaluated the child and concluded that the child was at the severe end of the autism spectrum. The child began attending the Wayman Learning Center ("Wayman") at the end of 2005. The child received a program of applied behavior analysis ("ABA") on a one-on-one basis. ABA is a peer-reviewed, research based methodology for teaching children with autism.

At the request of the parents, the Defendant conducted an initial meeting on April 7, 2006 to develop an Evaluation and Review Plan ("ERP"). The ERP committee determined that it required additional information concerning the child's development and educational needs. As such, the Defendant completed a Full Individual Evaluation ("FIE") of the child on May 12, 2006. The FIE was consistent with Dr. Genecov's findings that the child was at the severe end of the autism spectrum. As of the May 12, 2006 FIE, the child's receptive language skills were identified as below the developmental age of 12 months. The child did not demonstrate competent cognitive verbal, fine motor and visual motor imitation skills. The child did, however, demonstrate emerging fine motor skills as well as visual motor imitation skills.

The May 12, 2006 FIE provided the following recommendations:

1.  The Admission, Review and Dismissal ("ARD")/Individualized Education Plan ("IEP") committee should determine if the child is eligible for special education services as a student with autism and a speech impairment;

2.  If the child is eligible for special education services, the ARD committee should develop a program to meet the child's educational needs; and

3.  The child should attend the pre-kindergarten classroom five (5) days per week with sixty (60) minutes of speech therapy to be provided within the classroom due to the

-4-

child's developmental delays and disruptions.

On May 18, 2006, an ARD committee meeting was convened to consider special education services for the child. The ARD committee developed an IEP for the child which focused on improving the child's cognitive skills through mastery of the following short term objectives:

1.    Imitate demonstrating the function of ten common toys;

2.    Search for a preferred object once it was removed from sight;

3.    Choose between two preferred toys or foods;

4.    Consistently follow single-step directions with and without gestures;

5.    Imitate simple vocalizations; and

6.    Learn five new signs and use them appropriately.

The ARD committee concluded that the child should be placed at the Defendant's Beaty Early Childhood School ("Beaty"). The ARD committee recommended that the child receive special education instruction five days per week for two and one-half hours each day in a pre-kindergarten integrated classroom.[2] It was also recommended that the child receive speech therapy. The May 18, 2006 IEP did not include related services such as in-home training or occupational therapy. Extended School Year ("ESY") services were not recommended.

Since the 2005-2006 school year ended on May 24, 2006 (three days after the child attained the age of three), the child did not access the educational services offered until the beginning of the following school year which began in August 2006. The parents dually enrolled the child at Beaty as well as at Wayman. Because of the child's dual enrollment, the child attended Beaty three days

---

[2]An integrated classroom consists of approximately 50% students with disabilities and 50% students without disabilities.

per week rather than the recommended five days per week. Further, on the days that the child attended Beaty, the child arrived at 12:45 p.m. rather than 12:30 p.m.

Within the first three weeks of the 2006-2007 school year, the Defendant convened another ARD committee meeting on August 25, 2006 to discuss the child's placement and attendance. The purpose of the meeting was to review and modify the May 18, 2006 IEP. The child's teacher and speech pathologist recognized that the child required a smaller, more restrictive educational environment with a lower student-teacher ratio. The August 25, 2006 ARD committee subsequently changed the child's placement to a self-contained classroom that consisted of five to six children with disabilities, a full time special education teacher, two to three teaching assistants and a speech pathologist two and one-half days per week.

On March 20, 2007, the ARD committee reconvened. The ARD committee concluded that the child should be provided seven and one-half hours of special education per school week. Additionally, the child would be placed in the self-contained class from 12:45 p.m. until 2:00 p.m. when the child would be transferred to a structured class for the duration of his school day. The child received one-on-one instruction in the structured class.

On May 14, 2007, the ARD committee met to develop the child's IEP for the 2007-2008 school year. Due to disagreements between the parents and the Defendant, the ARD committee again met on June 13 and 20, 2007. The ARD committee recommended that the child receive special instruction five days per week for an extended school day of five hours each day as well as speech therapy. The ARD committee further recommended that the child receive one-on-one instruction. Finally, the ARD committee recommended that the child receive ESY services for five

hours per day, four days per week for six weeks with 60 minutes per week of speech therapy.[3]

Thereafter, on August 24 and September 5, 2007, the ARD committee convened to review new evaluation reports. The committee recommended (1) in-home training for three hours per week for two weeks to be followed by one hour sessions per week through May 13, 2008, (2) parent training for three hours, and (3) occupational therapy for 840 minutes per year of direct services and 840 minutes per year of staff consultation. The parents, however, did not agree with the recommendations and did not access any of the services. The parents chose not to re-enroll the child at Beaty for the 2007-2008 school year.

On July 27, 2007, the Texas Education Agency received the Plaintiffs' request for a due process hearing. The Plaintiffs sought a due process hearing pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. ("IDEA"). At the due process hearing, the Plaintiffs asserted the following:

1.     The child did not progress educationally during the 2006-2007 school year;

2.     The child regressed with respect to objectives mastered at Wayman once he began attending Beaty. Such regression was due to confusing or contradictory training methodologies used by the personnel at Beaty;

3.     The Defendant failed to provide in-home training during the 2006-2007 school year;

4.     The Defendant failed to provide any services to the child from the child's third birthday on May 21, 2006 until school began in August 2006;

5.     The Defendant failed to provide the child with ESY services for the summer of 2007;

6.     The Defendant failed to provide the child with a teacher certified in ABA; and

7.     The composition of the May 14, 2007 and June 13, 2007 ARD committee meetings

_____

[3]ESY services for the summer of 2007 were not discussed until the June 20, 2007 ARD committee meeting.

did not comply with the IDEA's procedural mandates.

Following the due process hearing on September 24 and 26, 2007 and October 25, 2007, the Special Education Hearing Officer issued his decision on November 27, 2007. The Special Education Hearing Officer subsequently withdrew his decision and issued his amended decision on January 7, 2008. The Special Education Hearing Officer found as follows:

1. The Defendant failed to convene duly constituted ARD committee meetings on the child's behalf on May 18 and August 25, 2006. As a direct consequence of these procedural errors, the child was denied a free appropriate public education ("FAPE") to the extent that he did not receive ESY services for the summer of 2006 as well as appropriate placement and programs for the first nine weeks of the 2006-2007 school year;

2. By failing to convene a duly constituted ARD committee on May 18, 2006, the Defendant withheld information from the parents that prevented the development of an appropriate IEP for the child;

3. By failing to convene a duly constituted ARD committee on May 18, 2006, the Defendant denied the parents the right to participate equally in the ARD process. As such, the Defendant arrived at a pre-determined decision regarding ESY services for the summer of 2006 which, in turn, deprived the child of a FAPE for the summer of 2006;

4. With the exception of the first nine weeks of the 2006-2007 school year, the Defendant developed an IEP for the child that was designed to provide an educational benefit for the child;

5. The child made educational progress and received a FAPE for all periods relevant to this case except for the summer of 2006 and the first nine weeks of the 2006-2007 school year;

6. The parents failed to access an appropriate ESY program that was developed for the child for the summer of 2007; and

7. The parents are entitled to reimbursement of their educational expenses incurred in educating the child at Wayman for the summer of 2006 and the first nine weeks of the 2006-2007 school year as compensation for the Defendant's failure to provide the child with an appropriate educational opportunity for that period.

The Special Education Hearing Officer ordered the Defendant to reimburse the parents for a total of 315 hours at $65.00 per hour as compensatory relief.[4]

On March 24, 2008, the Plaintiffs filed their lawsuit against the Defendant. On April 8, 2008, the Defendant filed its lawsuit against the Plaintiffs. Both lawsuits seek review of the Special Education Hearing Officer's decision under the IDEA. Specifically, the Plaintiffs argue as follows in their dispositive motion:

1. The Defendant denied the child a FAPE by not providing ESY services during the summer of 2006;

2. The Defendant denied the child a FAPE by failing to have required and/or critical members of the ARD committee at the ARD committee meetings;

3. The child did not receive a FAPE for the 2006-2007 school year; and

4. The Special Education Hearing Officer erred in dismissing the Plaintiffs' claims that the child regressed with respect to objectives mastered at Wayman and then subsequently un-mastered due to confusing or contradictory training methodologies used at Beaty.

Additionally, the Plaintiffs seek to recover their attorneys' fees. The Defendant, in its dispositive motion, argues that:

1. The Special Education Hearing Officer's award of relief was erroneously founded on an issue raised *sua sponte*;

2. The Special Education Hearing Officer's award of relief was erroneously founded on allegations barred by the statute of limitations;

3. The Special Education Hearing Officer erred as a matter of law in finding that the Defendant should have provided ESY services to the child during the summer of 2006;

4. The Special Education Hearing Officer erred in finding that the Defendant failed to provide a FAPE to the child; and

---

[4]The child attended Wayman 15 hours per week at a rate of $65 per hour.

5.   The Special Education Hearing Officer erred in awarding relief without making the required finding that the private placement provided to the child at Wayman was appropriate.

**STANDARD**

This case arises under the IDEA, the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482. The IDEA's purpose is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A).

States receiving federal assistance under the IDEA must: (1) provide a "free appropriate public education" ("FAPE") to each disabled child within its boundaries, and (2) ensure that such education is in the "least restrictive environment" ("LRE") possible. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir.1997); 20 U.S.C. § 1412(1), (5). The FAPE provided must be developed to each disabled child's needs through an "individual educational program" ("IEP"). *Michael F.*, 118 F.3d at 247; *see* 20 U.S.C. § 1414(d). In Texas, the committee responsible for preparing an IEP is known as an Admissions, Review, and Dismissal ("ARD") committee. *Michael F.*, 118 F.3d at 247.

"When a parent challenges the appropriateness of an IEP, a reviewing court's inquiry is two-fold." *Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d 576, 583 (5th Cir. 2009). "The court must first ask whether the state has complied with the procedural requirements of the IDEA, and then determine whether the IEP developed through such procedures was 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* at 583-84 (citation omitted). "If the court finds that the state has not provided an appropriate educational placement, the court may require the school

-10-

district to reimburse the child's parents for the costs of sending the child to an appropriate private school or institution." *Id*. at 584 (citations omitted). "Reimbursement may be ordered only if it is shown 'that (1) an IEP calling for placement in a public school was inappropriate under the IDEA, and (2) the private school placement . . . was proper under the Act.'" *Id*. (citation omitted).

The role of the judiciary under the IDEA is limited, leaving the choice of educational policies and methods in the hands of state and local school officials. *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003), citing *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996). "Under the IDEA, a federal district court's review of a state hearing officer's decision is 'virtually *de novo*.'" *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003). "The district court must receive the state administrative record and must receive additional evidence at the request of either party."[5] *Id*. The court must reach an independent decision based on a preponderance of the evidence. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997). However, this requirement "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed.2d 690 (1982). Instead, "due weight" is to be given to the hearing officer's decision. *Id*. Thus, "courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was

---

[5]The parties filed requests to present additional evidence. On February 27, 2009, the court denied the parties' requests to present additional evidence. Therefore, the court will determine the merits of the case based on the administrative record.

left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." *Id*. at 207.

The party seeking relief under the IDEA bears the burden of proof. *Schaffer v. Weast*, 546 U.S. 49, 62, 126 S. Ct. 528, 535-537, 163 L. Ed.2d 387 (2005). Specifically, "a party attacking the appropriateness of an IEP established by a local educational agency bears the burden of showing why the IEP and the resulting placement were inappropriate under the IDEA." *Michael F.*, 118 F.3d at 252.[6]

**ANALYSIS**

### A.      May 18, 2006 ARD Committee Meeting[7]

After hearing the evidence at the due process hearing and after considering the briefing of the parties, the Special Education Hearing Officer was satisfied that the Defendant failed to comply with the procedural requirements of the IDEA. The ARD committee should be comprised of the parents of the child with a disability, at least one of the child's regular education teachers, at least one special education teacher, a qualified representative of the school district, an individual who is able to "interpret 'the instructional implications of evaluation results,'" others, at the discretion of the parents or agency, who have knowledge or special expertise regarding the child, and, when appropriate, the child. *V.P.*, 582 F.3d at 580 n.1, citing 20 U.S.C. § 1414(d)(1)(B); *Michael F.*, 118

---

[6]"[The Fifth Circuit] ha[s] never distinguished the administrative level from the district court level for purposes of determining who bears the burden of proof. Rather, [the Fifth Circuit] ha[s] applied the same general rule that the burden of proof lies with the party challenging the IEP regardless of the stage of the proceeding." *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 n.4 (5th Cir. 2009) (citations omitted). As such, the Fifth Circuit concluded "that at the district court level, as at the administrative level, the party challenging the IEP bears the burden of showing that the IEP and the resulting placement are inappropriate under IDEA." *Id*.

[7]The August 25, 2006 ARD committee apparently did not comply with the procedural requirements of the IDEA as well.

F.3d at 247.

The May 18, 2006 ARD committee meeting was comprised of the following individuals:

1.   Jean Belcher, a special language evaluator, served as the individual who could interpret the instructional implications of evaluation results. Ms. Belcher also served as the Defendant's representative;

2.   Stephanie Craft, a diagnostician, served as the child's special education teacher. Ms. Craft, however, was neither the child's special education teacher nor was it planned that she would be the child's special education teacher. Additionally, Ms. Craft was not employed by the Defendant as a special education teacher at the time of the May 18, 2006 ARD committee meeting;

3.   Debbie Jennings, one of the Defendant's school psychologists, also served as an individual who could interpret the instructional implications of evaluation results; and

4.   The parents.

A regular education teacher, as well as a representative from Wayman (an individual who has knowledge or special expertise regarding the child) were notably missing from the May 18, 2006 ARD committee meeting. While the parents could have invited a representative from Wayman to attend the May 18, 2006 ARD committee meeting, the record reveals that the parents were unfamiliar with the IDEA's procedures and special education services. The Defendant did not invite a Wayman representative to attend the May 18, 2006 ARD committee meeting, nor does the record reflect that the Defendant sought permission from the parents to invite a Wayman representative to attend the same. The Special Education Hearing Officer found, and the court agrees, that certain statutorily mandated members of the May 18, 2006 ARD committee meeting were absent. Accordingly, the May 18, 2006 ARD committee meeting did not comply with the procedural requirements of the IDEA.

However, procedural defects, standing alone, do not rise to the level of a violation of the right

to a FAPE unless such procedural defects result in the loss of an educational opportunity. *Adam J.*, 328 F.3d at 811-12. Here, the Special Education Hearing Officer concluded that the absence of the statutorily mandated members at the May 18, 2006 ARD committee meeting resulted in the child's inappropriate initial placement in an integrated pre-kindergarten classroom. Further, the Special Education Hearing Officer found that the procedural defects resulted in the ARD committee's failure to provide the child with ESY services for the summer of 2006.[8]

Having reviewed the record herein, the court, like the Special Education Hearing Officer, finds by a preponderance of the evidence that the procedural defects in the makeup of the May 18, 2006 ARD committee resulted in a loss of educational opportunity to the child. The Defendant was aware that the child was severely autistic. However, the ARD committee concluded that ESY services for the summer of 2006 were not recommended because the child was expected to recoup previously mastered skills within a reasonable time after the 2006-2007 school year commenced. Further, the ARD committee concluded that the child was not eligible for ESY services for the summer of 2006 because, as a new, prospective student, the ARD committee had no specific data regarding potential regression or recoupment of learned skills. However, had the ARD committee invited a representative from Wayman (an individual who had knowledge or special expertise regarding the child) to attend the May 18, 2006 ARD committee meeting, the committee would have had access to additional information with respect to the child's eligibility for ESY services.

The court further notes that the May 18, 2006 ARD committee minutes do not reflect that the committee discussed ESY services for the summer of 2006 with the parents. In fact, the child's

---

[8]Although the parents agreed with the decisions made by the May 18, 2006 ARD committee, as noted previously, the parents were unfamiliar with the IDEA's procedures and services.

mother testified at the due process hearing that the ARD committee members did not raise the issue of ESY services for the summer of 2006 with the parents.

Additionally, the court notes that had the ARD committee invited a representative from Wayman (an individual who had knowledge or special expertise regarding the child) to attend the May 18, 2006 ARD committee meeting, the committee would have had access to additional information with respect to the child's educational placement for the 2006-2007 school year. Had the May 18, 2006 ARD committee complied with the procedural requirements of the IDEA, the court finds that the ARD committee would not have placed this severely autistic child in an integrated classroom. Based on the foregoing, the court concludes that the procedural defects in the composition of the May 18, 2006 ARD committee resulted in the loss of educational opportunities for the child.

The Defendant contends that any finding in favor of the Plaintiffs based on procedural violations at the May 18, 2006 ARD committee meeting is inappropriate because the issue was not identified as a basis for relief in the parents' due process complaint or as an issue for adjudication in the Special Education Hearing Officer's prehearing order. The court finds that the Defendant's argument lacks merit. The parents' due process complaint lists the following as a description of the proposed resolution:

> Parents request that Plano ISD provide, at District expense, 20 hours per week of private ABA instruction for S.H. for the 2007-2008 and 2008-2009 school years as compensation for the lack of provision of FAPE from May, 2007 until the present time.

The Special Education Hearing Officer clarified the Plaintiffs' issues as follows in his August 24, 2007 Prehearing Order:

1. That Student had a total lack of educational progress during the 2006-2007 school year;

2. That Student regressed with respect to objectives mastered at the Wayman Center and then "unmastered" those objectives due to confusing or contradictory training methodologies used at School District despite School District personnel having access to the Wayman Center for observation;

3. School District failed to provide In-Home Training during the 2006-2007 school year;

4. School District failed to provide any services to Student from Student's third (3rd) birthday in May, 2006 until school began in August, 2006;

5. School District failed to provide Student with ESY services for the summer of 2007;

6. School District failed to have teacher certified in Applied Behavior analysis as required by the Petitioner; and

7. School District committed procedural violations in connection with Admission, Review and Dismissal meetings held on May 14, 2007 and June 13, 2007.

While the parents' due process complaint did not discuss the May 18, 2006 ARD committee meeting, any question as to the issues to be discussed was addressed in the prehearing order which specifically states that the Defendant failed to provide any services to the child from May 2006 until August 2006. As such, the court finds that the prehearing order provided the Defendant with notice of the Plaintiffs' complaints regarding procedural violations at the May 18, 2006 ARD committee meeting.

The Defendant further contends that the Plaintiffs were not permitted to raise the procedural violations that occurred at the May 18, 2006 ARD committee meeting as a basis for relief because the same is barred by the applicable statute of limitations. The Defendant argues that in Texas, a parent must request a due process hearing within one year of the date the complainant knew or

should have known about the alleged action that serves as the basis for the due process hearing request. *See* 19 TEX. ADMIN. CODE § 89.1151(c). Here, the Plaintiffs filed their request for a due process hearing on July 27, 2007 which was over two months after the expiration of the one year limitations period with respect to the May 18, 2006 ARD committee meeting. The Special Education Hearing Officer addressed the Defendant's limitations contention as follows:

> The District was aware on May 18, 2006, that the Student's parents were novices in the world of special education services. (This conclusion stands even though the Student's father is an established attorney who practices in an area other than special education law.) By failing to invite or include key personnel at the May 18, 2006 ARD, the District effectively withheld from the parents the availability of important input regarding the Student's need for careful placement and ESYS. As such, I hereby conclude that regulation 34 CFR §300.511 (f)(2), proffered by the Petitioner, applies to this case. The fact that the Student was entitled to EYS [sic] for the *entire* summer, including the brief period on and after July 27, 2006 within the one year limitation period, only supports the equitable application of this exception.

The statute of limitations does not apply to a parent if the parent was prevented from filing a due process complaint because the school district withheld requisite information from the parent. 34 C.F.R. § 300.511(f)(2). Having reviewed the record, the court agrees with the finding of the Special Education Hearing Officer that the parents were prevented from filing a timely due process complaint due to the Defendant's failure to include appropriate individuals on the May 18, 2006 ARD committee.

### B. Implementation of the Child's IEP

The Plaintiffs contend that the child did not receive a FAPE for the 2006-2007 school year. Additionally, the Plaintiffs argue that the Defendant failed to provide the child with in-home training and occupational therapy services during the 2006-2007 school year or ESY services during the summer of 2007. Finally, the Plaintiffs contend that the Defendant was required to employ ABA as

well as a teacher qualified to implement the same in order to provide the child with a FAPE.

The parents, however, dually enrolled the child at Beaty as well as at Wayman. According to 19 TEX. ADMIN. CODE §89.1096(c),

> Parents of an eligible student ages 3 or 4 shall have the right to "dual enroll" their student in both the public school and the private school beginning on the student's third birthday and continuing until the end of the school year in which the student turns five or until the student is eligible to attend a district's public school kindergarten program, whichever comes first, subject to paragraphs (1) - (3) of this subsection. The public school district where a student resides is responsible for providing special education and related services to a student whose parents choose dual enrollment.

> > (1) The student's ARD committee shall develop an individualized education program (IEP) designed to provide the student with a FAPE in the least restrictive environment appropriate for the student.

> > (2) From the IEP, the parent and the district shall determine which special education and/or related services will be provided to the student and the location where those services will be provided, based on the requirements concerning placement in the least restrictive environment set forth in 34 CFR, §§ 300.114-300.120, and the policies and procedures of the district.

> > (3) For students served under the provisions of this subsection, the school district shall be responsible for the employment and supervision of the personnel providing the service, providing the needed instructional materials, and maintaining pupil accounting records. Materials and services provided shall be consistent with those provided for students enrolled only in the public school and shall remain the property of the school district.

If the parents, as here, choose to dually enroll their child, then they are subject to the following provision:

> Complaints regarding the implementation of the components of the student's IEP that have been selected by the parent and the district under subsection (c) of this section may be filed with the Texas Education Agency under the procedures in 34 CFR, §§ 300.151-300.153. Additionally, parents may request mediation as outlined in 34 CFR, § 300.506. The procedures in 34 CFR, §§ 300.300, 300.504, 300.507, 300.508, and 300.510-300.518 (relating to due process hearings) do not apply to complaints regarding the implementation of the components of the student's IEP that have been

selected by the parent and district under subsection (c).

19 Tex. Admin. Code §89.1096(f). According to the above-referenced provision, the implementation of the IEP's from the May 18 and August 25, 2006 ARD committee meetings are not subject to challenge by the Plaintiffs.

### C.     *Relief*

The Special Education Hearing Officer concluded that the parents were entitled to reimbursement of their educational expenses incurred in educating the child at Wayman for the summer of 2006 (failure to provide ESY services) and the first nine weeks of the 2006-2007 school year as compensation for the Defendant's failure to provide the child with an appropriate educational opportunity for that period. The Special Education Hearing Officer found that the child's incorrect initial placement in an integrated classroom by the May 18, 2006 ARD committee for the first three weeks of the 2006-2007 school year was corrected by the August 25, 2006 ARD committee. However, the Special Education Hearing Officer concluded that satisfactory evidence of the child receiving an educational benefit was not established until October 12, 2006. Accordingly, the Special Education Hearing Officer found that the parents should be reimbursed for this initial nine week period.

Having reviewed the evidence, the court finds that the parents should be reimbursed their private educational costs for the summer of 2006 (failure to provide ESY services). However, an IEP must be geared to provide "meaningful" educational benefit. *Rowley*, 458 U.S. at 192; *see also Michael F.*, 118 F.3d at 248. The inquiry does not turn, however, upon whether the Defendant provided the child with an education designed to maximize the child's potential. *Michael F.*, 118 F.3d at 247-48. As the IDEA guarantees a "basic floor of opportunity," the Defendant is only bound

to provide "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Rowley*, 458 U.S. at 201. "Nevertheless, the educational benefit to which the [IDEA] refers and to which an IEP must be geared cannot be a mere modicum or *de minimis*; rather, an IEP must be 'likely to produce progress, not regression or trivial educational advancement.'" *Michael F.*, 118 F.3d at 248 (footnotes omitted), quoting *Bd. of Educ. of East Windsor Regional Sch. Dist. v. Diamond*, 808 F.2d 987, 991 (3d Cir.1986).

Here, the IEP developed by the May 18, 2006 ARD committee was not appropriate. The August 25, 2006 ARD committee, however, corrected the IEP. Since an IEP must only be likely to produce progress, reimbursement for errors in the development of an IEP should not rest on the eventual confirmation of progress. As such, the court finds that the parents are entitled to reimbursement of their educational expenses incurred in educating the child at Wayman for the summer of 2006 (failure to provide ESY services) and the first three weeks of the 2006-2007 school year as compensation for the Defendant's failure to provide the child with an appropriate educational opportunity for that period.[9] The Defendant shall reimburse the parents for a total of 225 hours at $65.00 per hour as compensatory relief.[10]

---

[9]The Defendant contends that the Special Education Hearing Officer's award of compensatory relief based on the Defendant's failure to provide ESY services to the child during the summer of 2006 violates the Spending Clause. The Defendant contends that it was not on notice that acceptance of federal funds under the IDEA would obligate the Defendant to provide ESY services when the parents did not present evaluations and the Defendant did not have documentation regarding potential regression or recoupment of learned skills. Having previously discussed this issue, the court finds that the Defendant's Spending Clause argument lacks merit.

[10]The Defendant argues that the Special Education Hearing Officer erred as a matter of law in concluding that reimbursement was appropriate without conducting a review of the child's placement at Wayman. As noted earlier, for parents of a disabled child to be entitled to reimbursement for private schooling, they must show both that (1) an IEP calling for placement in a public school was inappropriate under the IDEA, and (2) the private school placement was proper under the Act. *V.P.*, 582 F.3d at 584. Such a review is not applicable herein where the child availed himself of a statutorily permissible dual

### D.    Attorneys' Fees

The Plaintiffs request their attorneys' fees and costs.  In an action brought under the IDEA, the court may, in its discretion, award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability.  20 U.S.C. § 1415(i)(3)(B)(i)(I).

The court must first determine if the Plaintiffs are prevailing parties.  The Fifth Circuit "has specifically held that in IDEA cases, a prevailing party is one that attains a remedy that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA." *Jason D.W. v. Houston Independent School Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (citation omitted).  "[A] litigant must attain some judicial imprimatur on a material alteration of the legal relationship in order to be a prevailing party." *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422 (5th Cir. 2009).  The court finds that the Plaintiffs meet the requirements of a prevailing party with respect to the claims on which they were successful. Accordingly, attorneys fees and costs shall be limited to those incurred in the preparation of the issues upon which the Plaintiffs were successful at the due process hearing and the instant lawsuit. The parties are encouraged to reach an agreement regarding the Plaintiffs' reasonable and necessary attorneys' fees. If the parties are unable to reach such an agreement, the Plaintiffs shall file a motion for attorneys' fees and costs within thirty (30) days of the entry of this order.  Once the court has either been notified of the parties' agreement or the court has resolved the issue of attorneys' fees, the court will enter a final judgment.

---

enrollment opportunity.

## CONCLUSION

Based on the foregoing, Plano Independent School District's motion for summary judgment on the administrative record (docket entry #32) and Plaintiff S.H.'s motion for judgment on the administrative record (docket entry #33) are hereby **GRANTED IN PART**.

**SIGNED this the 31st day of March, 2010.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE